## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re:<br><br>YELLOW CORPORATION, *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 23-11069 (CTG)<br>(Jointly Administered)<br><br>**Re: Docket Nos. 2576, 2577, & 2578**<br>**Hearing Date:**<br>**April 11, 2024 at 11:00 a.m. (ET)** |

## COUGHLEN WARN PLAINTIFFS' RESPONSE TO DEBTORS' THIRD, FOURTH, AND FIFTH OMNIBUS (SUBSTANTIVE) OBJECTIONS TO PROOFS OF CLAIM FOR WARN LIABILITY

Certain claimants and creditors identified in Exhibit A attached hereto ("Claimants"), by and through their undersigned counsel and plaintiffs in the pending adversary proceeding styled as *Coughlen, et al. v. Yellow Corporation, et al.*, Adv. Proc. Case No. 23-50761 hereby respond (the "Response") to the *Debtors' Third, Fourth and Fifth Omnibus (Substantive) Objection To Proofs Of Claim For WARN Liability* [Docket Nos. 2576, 2577, and 2578] (the "Objections[2]") filed by the above-captioned debtors ("Debtors") and respectfully request that the Court enter an order overruling the Objections. Alternatively, the Claimants request that this Court delay ruling on the Objections to allow the Coughlen WARN Action to proceed through discovery and a trial, as may be warranted.

---

[1] The Debtors and their bankruptcy case numbers are: Yellow Corporation, Case No. 23-11069; 1105481 Ontario Inc., Case No. 23-11070; Express Lane Service, Inc., Case No. 23-11071; New Penn Motor Express LLC, Case No. 23-11072; Roadway Express International, Inc., Case No. 23-11073; Roadway LLC, Case No. 23-11074; Roadway Next Day Corporation, Case No. 23-11075; USF Bestway Inc., Case No. 23-11076; USF Dugan Inc., Case No. 23- 11077; USF Holland International Sales Corporation, Case No. 23-11078; USF Holland LLC, Case No. 23-11079; USF RedStar LLC, Case No. 23-11080; USF Reddaway Inc., Case No. 23-11081; Yellow Freight Corporation, Case No. 23-11082; Yellow Logistics, Inc., Case No. 23-11083; YRC Association Solutions, Inc., Case No. 23-11084; YRC Enterprise Services, Inc., Case No. 23-11085; YRC Freight Canada Company, Case No. 23-11086; YRC Inc., Case No. 23-11087; YRC International Investments, Inc., Case No. 23-11088; YRC Logistics Inc., Case No. 23- 11089; YRC Logistics Services, Inc., Case No. 23-11090; YRC Mortgages, LLC, Case No. 23-11091; and YRC Regional Transportation, Inc., Case No. 23-11092.

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in Debtors' Objections.

## PRELIMINARY STATEMENT

1.      By utilizing the claims objection process, Debtors have effectively requested that the Court enter summary judgment on their WARN liability without being subjected to a formal discovery process. As such, Claimants and all other WARN adversary plaintiffs face the prospect of their ability to recover against Debtors being completely wiped out on a fragmented and cherry-picked factual record.

2.      However, even when examining the favorable record proffered by Debtors, it is clear that Debtors cannot carry their burden to show that they can even invoke any of the WARN defenses that have been raised. Even if Debtors do qualify to assert these defenses, on the record before the Court Debtors have not carried their burden to show that they can satisfy the elements of each defense.

3.      At a minimum, the Court must permit Claimants to take discovery on Debtors' alleged WARN defenses, enter a scheduling order, and put in place procedures to encourage a uniform approach amongst all WARN claimants with respect to WARN-related issues.

4.      For the reasons set forth in this Response, the Objections must be overruled and the WARN claims permitted.

## BACKGROUND

5.      On August 6, 2023 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. These chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015(b) [Docket No. 169]. Debtors are managing their businesses and their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

6.      On September 13, 2023, the Court entered the *Order (I) Setting Bar Dates for Filing Proofs of Claim, Including Requests for Payment Under Section 503(b)(9), (II) Establishing Amended Schedules Bar Date and Rejection Damages Bar Date, (III) Approving the Form of and Manner For Filing Proofs of Claim, Including Section 503(B)(9) Requests, and (IV) Approving Form and Manner of Notice Thereof* [Docket No. 521] (the "Bar Date Order") establishing certain dates and deadlines for filing proofs of claim in these chapter 11 cases. As relevant here, the bar date established November 13, 2023 at 11:59 p.m. prevailing Eastern Time (the "Claims Bar Date"), as the final date and time for all persons and entities holding claims against Debtors, that arose or are deemed to have arisen prior to the Petition Date, to file Proofs of Claim in these chapter 11 cases for: (i) requests for payment under section 503(b)(9) of the Bankruptcy Code (ii) secured claims, (iii) unsecured priority claims, (iv) unsecured non-priority claims, (v) contingent claims, (vi) unliquidated claims, (vii) disputed claims, and (viii) rejection damage claims for executory contracts and unexpired leases that have already been rejected by order of the Court in these chapter 11 cases. *See* Docket No. 566 (Claims Bar Date notice).

**The Coughlen Adversary Proceeding**

7.      On November 13, 2023, William G. Coughlen, individually and on behalf of others similarly situated (collectively, the "Coughlen WARN Plaintiffs"), filed a class action adversary complaint [Adv. 23-50761, Adv. Proc. Docket No. 1] against Debtors Yellow Corporation, YRC Inc., USF Holland, LLC, New Penn Motor Express LLC, Yellow Logistics, Inc., and USF Reddaway, Inc. (collectively, the "Defendants") alleging various labor violations on behalf of himself and approximately 30,000 similarly situated individuals ("Coughlen WARN Action"). *See* Adv. 23-50761, Docket No. 1, ¶ 23.

16628017/4

8.      Prior to the Claims Bar Date, Claimants filed proofs of claim against Debtors for violation of the Worker Adjustment and Retraining Notification Act ("WARN Act") and in connection with the filing of the Coughlen WARN Action. The Coughlen WARN Plaintiffs filed a total of 491 proofs of claim, including class proofs of claim against each of the Debtors. *See* Exhibit A.

9.      On February 7, 2024, Defendants in the Coughlen WARN Action filed *Defendants' Answer To Plaintiff's Class Action Adversary Proceeding Complaint* ("Answer") asserting seventeen affirmative defenses. *See* Adv. 23-50761, Docket No. 4. As of the date of this Response, no scheduling order has been entered in the Coughlen WARN Action.

10.     On February 19, 2024, the Coughlen WARN Plaintiffs filed a *Motion For Appointment Of Interim Co-Lead Counsel, Consolidation Of Cases, And Establishment Of Procedures For Consolidation Of Future-Filed Cases* ("Motion"). Adv. 23-50761, Docket No. 6. Defendants opposed on March 15, 2024. Adv. 23-50761, Docket No. 9.

11.     The Motion is currently set to be adjudicated on April 11, 2024. *See* Adv. 23-50761, Docket No. 8.

**WARN Claim Objections**

12.     On March 12, 2023, Debtors filed a *Third Omnibus (Substantive) Objection To Proofs Of Claim For WARN Liability* [Docket No. 2576], *Fourth Omnibus (Substantive) Objection To Proofs Of Claim For WARN Liability* [Docket No. 2577] and *Fifth Omnibus (Substantive) Objection To Proofs Of Claim For WARN Liability* [Docket No. 2578].

4

13.     As relevant to the Coughlen Plaintiffs, Debtors seek to disallow all WARN-related proofs of claim, including the Contested Claims, on the basis[3] that Claimants could not meet their burden to establish that Debtors were liable for violations of the WARN Act.

## RESPONSE TO 3RD, 4TH, AND 5TH CLAIM OBJECTIONS

14.     In many ways this matter is a prototypical case for WARN liability. Despite months of acknowledging that the company was on the precipice of financial ruin, Debtors waited until after it had laid off nearly its entire workforce before deciding to issue the required WARN notices. Debtors' actions are precisely the type of conduct that the WARN Act was meant to protect against.

15.     Congress passed the WARN Act to ensure that employees received adequate notice before their employer ordered a mass layoff or plant closing. 29 U.S.C. § 2102(a). As Congress found, advance notice of mass layoffs is critical to protecting workers, their families, and their communities. It gives workers time to retrain, apply for new jobs, and adjust their financial circumstances before losing their income. It enables state and local governments to help laid-off employees find new jobs. And it places workers in the best position possible to protect their families' access to food, healthcare, and education. *See generally* H.R. Rep. No. 100-576, pt. 2, at 1045 (1988), *reprinted in* H. Subcomm. on Lab.-Mgmt. Relations of the Comm. on Educ. & Lab., 101st Cong., 2d Sess., Legislative History of S. 2527, 100th Cong., WARN, Pub. L. No. 100-379, at 571 (1990); U.S. Dep't of Labor, Economic Adjustment and Worker Dislocation in a Competitive Society: Report of the Secretary of Labor's Task Force on Economic Adjustment and Worker Dislocation 10 (1986).

---

[3] As reflected in the spreadsheet attached as Exhibit A, Schedule 5 of Debtors' Third Omnibus Objection includes an objection to sixteen of the Claimants on the basis that Debtors lack sufficient information to determine whether those Claimants were actually employed by Debtors at the time the layoffs occurred. Counsel for the Coughlen Plaintiffs is currently working to gather information to provide to Debtors' counsel to verify employment of these individuals to resolve that portion of the Third Omnibus Objection.

16.     With certain exceptions, the WARN Act requires an "employer" to provide its employees with sixty days' notice of a "plant closing" or "mass layoff." 29 U.S.C. § 2102. If the employer fails to do so, it may be liable to "each aggrieved employee" for up to sixty days' back pay and benefits. *Off'l Comm. of Unsecured Creditors v. United Healthcare System, Inc. (In re United Healthcare System, Inc.)*, 200 F.3d 170, 176 (3d Cir. 1999) (citing 29 U.S.C. § 2104(a)). In effect, the WARN Act establishes "strict liability:" an employer must give 60 days' notice unless it can demonstrate that it falls within one of the specifically enumerated exceptions. *In re APA Transp. Corp. Consol. Litig.*, 541 F.3d 233, 248 (3rd Cir. 2008).

17.     The employer may avoid WARN liability by proving as an affirmative defense that it qualifies for one of the Act's exceptions: the "faltering company" exception; the "unforeseen business circumstances" exception; or the "natural disaster" exception. *See* 29 U.S.C. § 2102. Numerous courts have held that the WARN Act's exceptions permitting a reduction of the notice period run counter to the Act's remedial purpose and thus, are to be "narrowly construed." *Stewart v. Giuliano (In re Start Man Furniture, LLC),* 647 B.R. 116, 127 (D. Del. Dec. 13, 2022) (citing cases).

18.     Here, Debtors contend that the WARN-related proofs of claim should be disallowed and expunged on the basis that claimants have no valid WARN claims because, under the circumstances, providing 60 days' notice under the WARN Act was neither feasible nor required. Debtors contend that they were exempt from providing any WARN notice as "liquidating fiduciaries" or, alternatively, that the truncated notice provided by Debtors is excused under the WARN Act's "faltering company" exception and "unforeseen business circumstances" exception. Finally, Debtors contend that even if they are liable for WARN violations, they acted in good faith and therefore qualify for a statutory reduction in liability.

19.     Debtors' arguments fail for multiple reasons and their Objections should be overruled.  First, as a procedural matter, the Objections are essentially summary judgment motions to the Coughlen WARN Action and the corresponding WARN adversary proceedings, including those styled as *Rivera et al. v. Yellow Corporation et al.*, Adv. Proc. Case No. 23-50456 and *Moore et al. v. Yellow Corporation et al.*, Adv. Proc. Case No. 23-50457. The Defendants elected to answer the Coughlen WARN Action and the other WARN actions. The Debtors should not be permitted to circumvent the governing rules of the Federal Rules of Civil Procedure, as made applicable (as modified) to the adversary proceedings pursuant to Bankruptcy Rule 7002 and to contested matters pursuant to Bankruptcy Rule 9014(c).

20.     Because the Debtors responded to the Coughlen WARN Action by filing an Answer, they should be required to move through the channels of litigation – subjecting themselves to a scheduling order, discovery, and trial, as may be necessary.  *See* Fed. R. Bankr. P. 7026.

21.     The Court should deny or delay the hearing on the Objections until such time as the discovery is permitted to be completed and the Objections should be treated as a summary judgment, subject to full briefing at the appropriate time. *See* Fed. R. Bankr. P. 9014(c) (applying summary judgment procedures of Fed. R. Bankr. P. 7056 to adjudication of contested matters). Indeed, in the statement issued by the Official Committee of Unsecured Creditors, it is acknowledged that discovery is necessary. *See* Docket No. 2755. Ruling on the Objections, including standalone WARN claimants (*see* Docket Nos. 2758-2762) prior to a full discovery through the adversary proceedings is premature and contrary to due process and notice requirements provided by the governing rules of procedure.

## I.      INDIVIDUAL UNION CLAIMANTS HAVE STANDING TO ASSERT WARN CLAIMS AGAINST THE DEBTORS INDEPENDENT OF THE UNION

22.      As a preliminary matter, an issue has been raised as to whether a union's assertion of WARN-related claims encompassed WARN claims asserted by union[4] members of the Coughlen WARN Plaintiffs. This issue is not ripe for adjudication in the Objections, but was raised in the union's response to WARN claims,[5] for the sake of completeness it will be addressed below.

23.      The structure of the WARN Act demonstrates that while a union may bring a WARN Act claim, any recovery is ultimately owed to its individual members. The WARN Act states that the employer is liable to the individual "aggrieved employee." *See* 29 U.S.C. § 2104(a)(1). The statute goes on to state that either the aggrieved employee or its "representative" may sue to recover the amounts owed under the statute. 29 U.S.C. § 2104 (a)(5). The WARN Act defines "representative" as the "exclusive representative" of the employees under 29 U.S.C. § 159, *i.e.*, the employees' union. 29 U.S.C. § 2101(a)(4). Taken together, these sections show that either a union or an individual union member may bring a WARN Act claim, but the individual member retains the right to receive any recovery. *Preston Trucking Co. v. Liquidity Solutions, Inc. (In re Preston Trucking Co.)*, 392 B.R. 623, 629 (D. Md. 2008).

24.      Because the WARN Act makes no provision for liability to the union itself, § 2104 cannot reasonably be read as allowing the union to maintain its own claim while its employee members do the same. As the Supreme Court has made clear, the union's standing to sue under the WARN Act is based on the doctrine of associational standing, which gives it "standing to bring

---

[4] The Coughen WARN Plaintiffs consist of both union and non-union employees. *See* Exhibit A. Thus, to the extent the Teamsters and Machinists purport to assert claims on behalf of union members, such authority would not extend to the non-union Coughlen WARN Plaintiffs.
[5] *See The International Brotherhood of Teamsters and Teamsters National Freight Industry Negotiating Committee, and the International Association of Machinists and Aerospace Workers' Response to Debtors' Third Omnibus (Substantive), Fourth Omnibus (Substantive), and Fifth Omnibus (Substantive) Objections to Proofs of Claim for WARN Liability* (Docket No. 2778).

16628017/4

suit on behalf of its members" in certain situations. *United Food & Commercial Workers Union Local 751 v. Brown Group, Inc.*, 517 U.S. 544 (1996). Under the doctrine of associational standing, "an association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of the individual members in the lawsuit." *Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333, 343 (1977).

25.     Read against this backdrop, § 2104 does not contemplate dual standing, but rather authorizes a person or that person's representative to sue for that person, for others persons similarly situated, or for both that person and those similarly situated. This reading of § 2104 is consistent with the *Hunt* test for associational standing, which requires an association to show that "its members would otherwise have standing to sue in their own right." *Hunt*, 432 U.S. at 343. Where those members have already sued in their own right, however, there is no statutory basis for the association to bring the exact same WARN Act claims on their behalf. *See Bonanini v. Kids Behavioral Health of Mont., Inc.,* 2020 U.S. Dist. LEXIS 111680, *9-10, 2020 WL 4060263 (D. Mont. 2020).

26.     Thus, the unionized Coughlen WARN Plaintiffs have independent standing to assert WARN claims and respond individually to the Objections.

## II.    DEBTORS' OMNIBUS OBJECTIONS SHOULD BE OVERRULED

27.     For purposes of completeness, and in reservation of all rights to further amend or supplement their responses, the Debtors' Objections also fail as a matter of law based on the circumstances and the following preliminary response – subject to discovery and further briefing.

28. First, Debtors do not qualify as "liquidating fiduciaries" because Debtors were still engaged in shipping and other business activities when the layoffs occurred and therefore still qualified as "employers" under the WARN Act.

29. Second, Debtors have not carried their burden to show that the WARN notices issued complied with the statutory requirements which, as a threshold matter, means that Debtors have not carried their burden to show that they qualify to raise any statutory WARN defenses. Debtors have not submitted copies of the WARN notices, nor have Debtors provided enough information to establish that the WARN notices contained the requisite information or were sent to all required parties. Nor have Debtors demonstrated that by providing WARN notice after the layoffs occurred, they gave Claimants "as much notice as is practicable."

30. Third, Debtors do not qualify for the "faltering company" exception to the WARN Act because that defense "applies to plant closings but not to mass layoffs." Because Debtors' conduct qualifies as a "mass layoff" and not a "plant closing" under the WARN Act, Debtors are precluded from raising that defense.

31. Fourth, Debtors also cannot rely on the "unforeseen business circumstances" defense. Debtors point exclusively to the IBT's July 17 strike notice as the sole basis for invoking this defense; however, the WARN notices provided by Debtors to Claimants do not mention the Union strike notice at all, meaning that the Union strike notice cannot be relied upon as an unforeseen business circumstance in this litigation. Regardless, the Union specifically informed Debtors as early as May 2023 that it would strike to protect its members' interests, and the strike notice was issued in direct response to Debtors decision to skip a $50 million payment to the Union health, welfare, and pension funds resulting in the imminent cancellation of employee benefits.

10

The Union's issuance of a strike notice was not only foreseeable but was the direct result of Debtors' own actions.

32.     Fifth, Debtors' reliance on the statutory "good faith" provision of the WARN Act cannot serve as a basis for complete disallowance or expungement of the WARN claims since that provision only allows for a reduction in the amount of WARN liability but does not completely eliminate it.

33.     Finally, to the extent that the Court is not inclined to overrule the Objections at this time, Claimants would respectfully request that the Court defer its ruling to allow Claimants sufficient time to conduct discovery on Debtors' WARN defenses.[6]

## III.     DEBTORS DO NOT QUALIFY AS LIQUIDATING FIDUCIARIES

34.     Debtors contend they were exempted from the 60-day notice period under the WARN Act pursuant to the "liquidating fiduciary" exception. Debtors argue that under the WARN Act, an "employer" must be a "business enterprise," but a fiduciary whose duty is to liquidate a failed business is not such an "employer" because the liquidating entity "is not operating as a business enterprise."

35.     In support of their argument, Debtors place primary reliance upon *In re United Healthcare Sys., Inc.*, 200 F.3d 170 (3d Cir. 1999). There, United Healthcare, a provider of hospital and healthcare services in the Newark area that was in serious financial straits, informed the New Jersey Department of Health that it was closing its hospital and healthcare facilities. On that same day, it also surrendered its certificates of need, the Department of Health revoked its certificates of need, and United Healthcare filed a voluntary Chapter 11 bankruptcy petition and provided its 1,300 employees with sixty days' notice of termination of employment pursuant to the WARN

---

[6] The Claimants and Debtors are engaged in discussions to establish a schedule for discovery and related steps, including dispositive motions.

16628017/4

Act. *Id.* at 173. Within 48 hours after United Healthcare issued the WARN notice, all of its patients had either been transferred to another hospital or sent home. Thereafter, United Healthcare employees were unable to perform their regular duties, including caring for patients, but instead cleaned, took inventory, and prepared the company's assets for sale. *Id.* at 173.

36.     The Third Circuit framed the issue as whether United Healthcare was an "employer" under the WARN Act and in making that determination, the court indicated it would "consider whether the entity was 'engage[d] in business' during the time prior to the plant closing or mass layoff." *Id.* at 177. Based upon the findings of fact adduced by the bankruptcy court, the Third Circuit concluded that United Healthcare, while in bankruptcy, "was operating not as a 'business operating as a going concern' but rather as a business liquidating its affairs" and did not "continue [] as an 'employer' within the meaning of the WARN Act when it assumed the role of fiduciary following the filing for bankruptcy." *Id.* at 177.

37.     Leaving aside that the court in *United Healthcare* recognized that in certain circumstances the WARN Act could apply even to an employer that files for bankruptcy and then terminates its employees, the facts in this case are wholly unlike those which were presented to the court in *United Healthcare*. On July 24, Debtors made the decision to discontinue accepting new shipments, but also made arrangements "to ensure that existing orders could be fulfilled." Docket No. 2576, *Declaration of Darren Hawkins* ("Hawkins Decl.") ¶ 100. On July 26, it became apparent to Debtors that the economic "damage was irreversible." Third[7] Omnibus Objection ¶ 106. On July 28, Debtors began laying off non-union employees by issuing Severance Agreements to non-Union employees waiving WARN liability. Hawkins Decl. ¶ 106. The day

---

[7] Debtors' Third Fourth, and Fifth Omnibus Objections utilize identical language, however the corresponding paragraph numbering of Debtors' Third Omnibus Objection is slightly different than the Fourth and Fifth Omnibus Objections. Although this Response is directed to all three Omnibus Objections, all references will be to the paragraph numbering of the Third Omnibus Objection unless otherwise noted.

after the initial round of layoffs, July 29, Debtors picked up their final shipment. Hawkins Decl. ¶ 107. On July 30, Debtors' final truck on the road ceased operation, and that same day Debtors laid off all remaining union employees. Hawkins Decl. ¶ 108. WARN notices were issued on July 31 and Debtors filed bankruptcy on August 6. *See* Hawkins Decl. ¶¶ 108, 113.

38.     As the timeline above demonstrated, during the course of the shutdowns and layoffs, Debtors continued to operate as a trucking business, even if it was only making the deliveries of those items that were already in the pipeline. Debtors were, unlike United Healthcare, performing some normal business functions, albeit at a reduced rate, and had not filed a bankruptcy petition when the WARN Act notices were sent. Although Debtors were clearly in the process of winding down when the layoffs occurred, the fact that Debtors continued to engage in some business operations through the day of the final round of layoffs means that Debtors were still an employer and not a liquidating fiduciary. *See e.g. Law v. Am. Capital Strategies, Ltd*., 2007 U.S. Dist. LEXIS 5936, 2007 WL 221671 (M.D. Tenn. Jan. 26, 2007) (holding that a company that informed drivers to make all the remaining shipments in the trucks and then consider the company closed still operated as an employer for one shift and was thus not a liquidating fiduciary).

39.     Debtors have not carried their burden to show they were exempted from the WARN Act's 60-day notice period under the "liquidating fiduciary" exception, and, as such, the Omnibus Objection must be overruled.

## IV.    DEBTORS DO NOT QUALIFY FOR ANY STATUTORY WARN DEFENSES

40.     Two provisions of the WARN Act allow for a reduction of the 60-day notification period. The so-called "faltering company" defense allows an employer to reduce the notification period "if as of the time that notice would have been required the employer was actively seeking capital or business which, if obtained, would have allowed the employer to avoid or postpone the

shutdown, and the employer reasonably and in good faith believed that giving the notice required would have precluded the employer from obtaining the capital or business." 29 U.S.C. § 2102(b)(1). Likewise, under the "unforeseeable business circumstances" defense, "[a]n employer may order a plant closing or mass layoff before the conclusion of the 60-day notice period if the closing or mass layoff is caused by business circumstances that were not reasonably foreseeable as of the time that notice would have been required." 29 U.S.C. § 2102(b)(2)(A).

41.     As a threshold matter, Debtors have not carried their burden to demonstrate that they qualify for the "faltering company" or "unforeseeable business circumstances" defenses because Debtors have not shown that the WARN notices comply with the statutory notice requirements. Even if Debtors meet the threshold requirements to raise these defenses, Debtors have not carried their burden to establish that either defense is viable. Debtors cannot invoke the "faltering company" defense because that defense is only available for single plant closings and not mass layoffs. Debtors cannot rely on the Union's strike notice to establish the "unforeseeable business circumstances" defense because the WARN notices issued by Debtors failed to include any reference to the Union's strike notice, and the Union's actions were entirely foreseeable in any event. Finally, Debtors also invoke the "good faith" provision of the WARN Act, however, that statutory provision does not provide a basis for complete disallowance of the WARN claims.

42.     As such, the Objections should be overruled.

**A.      Debtors' WARN Notices Do Not Meet The Statutory Prerequisites Sufficient To Invoke Any Statutory Defenses.**

43.     Section 2102(b) of the WARN Act mandates that an employer invoking either "unforeseeable business circumstances" or "faltering company" exception to provide its employees with "as much notice as is practicable and at that time shall give a brief statement of the basis for reducing the notification period." 29 U.S.C. § 2102(b)(3). Notice is required to be

14

sent "to each representative of the affected employees as of the time of the notice or, if there is no such representative at that time, to each affected employee." 29 U.S.C. § 2102(a)(1). Notice also must be served on the State dislocated worker unit and the chief elected official of the unit of local government within which a closing or layoff is to occur. 29 U.S.C. § 2102(a)(2); *see also* 20 CFR § 639.6; 20 C.F.R. § 639.7(d).

44.     Notice under the WARN Act should be "specific" and the required contents of the notice depend on whether the notice is being sent to the affected employee directly or to a representative of affected employees. *See* 20 C.F.R. § 639.7(c)-(d). If an employer fails to comply with the statutory notice requirements, it forfeits its ability to raise the "unforeseeable business circumstances" or "faltering company" defenses. *See D'Amico v. Tweeter Opco, LLC (In re Tweeter Opco, LLC)*, 453 B.R. 534, 547 (Bankr. D. Del. 2011).

45.     Here, Debtors have not met their burden to raise the "unforeseeable business circumstances" or "faltering company" defenses because they have not properly established that they have complied with all the statutory notice requirements of the WARN Act.

46.     *First*, Debtors have not submitted any copies of the WARN notices that were allegedly sent, making it impossible for Claimants or the Court to properly evaluate their sufficiency. Rather, Debtors rely on vague and conclusory declaration testimony as the sole basis to establish compliance with the notice requirements. *See* Hawkins Decl. ¶¶ 109-111. Because the content of the WARN notices is central to determining whether Debtors have a right to invoke the "unforeseeable business circumstances" or "faltering company" defenses, Debtors' failure to include copies of the WARN notices is fatal to their Objection.

47.     *Second*, Debtors fail to provide even basic information such as who sent the WARN notices, how the notices were issued, and to whom they were sent making it impossible for

16628017/4

Claimants or the Court to determine whether notice was sufficiently provided to all required parties[8]. Importantly, Debtors do not clarify whether the WARN notices were sent directly to employees or to employee representatives (such as the Union). This information is critical because notice to an employee representative is mandatory if such a representative exists, and the required contents of a WARN notice differ depending on to whom the notices are sent. *See* 20 C.F.R. § 639.7.

48.     Notices that are sent to employee representatives must contain: (1) the name and address of the employment site where the plant closing or mass layoff will occur, and the name and telephone number of a company official to contact for further information; (2) a statement as to whether the planned action is expected to be permanent or temporary and, if the entire plant is to be closed, a statement to that effect; (3) the expected date of the first separation and the anticipated schedule for making separations; (4) the job titles of positions to be affected and the names of the workers currently holding affected jobs. 20 C.F.R. § 639.7(c). In contrast, notices that are sent directly to affected employees must contain: (1) a statement regarding the temporary or permanent nature of the layoff; (2) the expected date of the mass layoff or plant closing; (3) information on "bumping rights"; and (4) the "name and telephone number of a company official to contact for further information." 20 C.F.R. § 639.7(d).

49.     Under the WARN Act, notice is required to be sent to the employee representative which is defined as "the chief elected officer of the exclusive representative(s) or bargaining agent(s) of affected employees at the time of the notice." 20 C.F.R. § 639.7(a); *see also* 29 U.S.C.

---

[8] Debtors supporting declarations only go so far as to say that "WARN Notices in connection with the layoffs were issued on July 31, 2023," Hawkins Decl. ¶ 108, and stop short of affirmatively asserting that all affected employees were provided adequate notice. Indeed, the recent filing of responses from various individual WARN claimants suggests that Debtors did not properly notify all employees. *See* Docket Nos. 2758-2762.

§ 2102(a)(1). A WARN notice sent directly to an employee is only compliant with the statute in the absence of an employee representative. *See* 29 U.S.C. § 2102(a)(1).

50.     Here, Debtors concede that the majority of their employees are represented by the Union. *See* Third Omnibus Objection ¶ 6. Indeed, the majority of the Claimants are Union members. Third Omnibus Objection ¶ 6. Thus, as to Union-represented Claimants, Debtors were required to send WARN notices directly to the Union in order to satisfy 29 U.S.C. § 2102(a)(1). However, Debtors do not provide any evidence that any WARN notice was sent to the Union or any other employee representative. Instead, the Hawkins Declaration implies that the notices were only sent directly to employees. *See* Hawkins Declaration ¶ 109. Even if the Union was sent WARN notices, the contents of the WARN notices described by Debtors would be insufficient because the notices omitted, among other things, "[t]he job titles of positions to be affected and the names of the workers currently holding affected jobs." 20 C.F.R. § 639.7(c)(4); *See* Hawkins Declaration ¶¶ 109-111.

51.     Even if the direct-to-employee notices were allowed to satisfy the statute, the contents of the WARN notices described by Debtors do not sufficiently "set forth specific facts in the notice that explain the reason for reducing the notice period." 29 U.S.C. § 2102(b)(3). Instead, the notices vaguely state that Debtors "had hoped to complete one or more transactions[9] and secure funds and business to prevent the closing" but were unable to do so and that "[t]hese circumstances were not reasonably foreseeable at the time notice would have otherwise been required and notice is further excused because the business is being liquidated." *See* Hawkins Declaration ¶¶ 109-111.

---

[9] Debtors devote a significant portion of the Omnibus Objections arguing that the Union's issuance of a strike notice was the primary cause of Debtors' downfall. Notably, however, Debtors' WARN notices do not cite the Union's issuance of a strike notice as a basis for invoking the "unforeseeable business circumstances" defense. Thus, to the extent that the Union's issuance of the strike notice might qualify as an unforeseeable business circumstance (a position that Claimants reject), Debtors cannot invoke it as a basis for claiming the defense because it was not part of the WARN notices that were issued.

Non-specific or conclusory language is insufficient to satisfy the statutory notice requirement. *See In re Tweeter Opco, LLC*, 453 B.R. at 547 ("By providing that an employer must give a brief statement of the basis for the shortened notice, Congress indicated that it intended something more than a citation to the statute or a conclusory statement summarizing the statutory provision." (citation omitted)); *Alarcon v. Keller Industries*, 27 F.3d 386, 389 (9th Cir. 1994) ("[W]e conclude that Congress' purpose in requiring a brief statement must have been to provide employees with information that would assist them in determining whether the notice period was properly shortened.").

52.    Debtors contend that to the extent the WARN notices themselves are deficient, they should be read in conjunction with several emails from June and July 2023 in order to fully satisfy the statute. Debtors rely on seven separate emails sent on June 8, (Hawkins Decl., Exhibit 18), June 13 (Hawkins Decl., Exhibit 19), June 21 (Hawkins Decl., Exhibit 23), June 23 (Hawkins Decl., Exhibit 24), June 27 (Hawkins Decl., Exhibit 25), and July 20 (Hawkins Decl., Exhibit 27), respectively. The emails simply articulate Debtors' view of the ongoing negotiations with the Union, and none of the emails contain any of the information required to be provided under the WARN statute. *See* 20 C.F.R. § 639.7(c). Thus, reading these emails in connection with the WARN notices does not cure any of the identified deficiencies.

53.    ***Third***, Debtors do not provide any evidence that they provided any notice, let alone sufficient notice, to the State dislocated worker unit and the chief elected official of the unit of local government within which a closing or layoff is to occur. 29 U.S.C. § 2102(a)(2); *see also* 20 CFR § 639.6; 20 C.F.R. § 639.7(d). Notice to these entities is required under the statute. *See Newman v. Crane*, 435 F. Supp. 3d 834, 843 fn. 3 (Ill. N.D., Jan. 22, 2020) ("World Marketing failed to provide notice to the relevant state officials on or before September 28, 2015. [cite]. That

provides an independent basis for concluding that World Marketing did satisfy WARN Act requirements.").

54.    ***Fourth***, Debtors do not provide sufficient evidence that they gave Claimants "as much notice as is practicable." 29 U.S.C. § 2102(b)(3). As explained more fully in Section II.C, *infra*, Debtors knew as early as May 2023 that the company would likely not financially survive through August. Despite this, Debtors took no action to issue WARN notices. Even in the final days when it became abundantly clear that Debtors' business would not survive, Debtors still waited an unreasonable amount of time to issue the WARN notices.

55.    On July 24, 2023, Debtors made the decision to discontinue accepting new shipments, effectively acknowledging that the business was shutting down. *See* Hawkins Decl. ¶ 100. Yet, Debtors did not issue any WARN notices. On July 26, 2023, it became apparent to Debtors that the economic "damage [to the company] was irreversible," Third Omnibus Objection ¶ 106, as Debtors "customers had left it … its deliveries had collapsed to near zero, and the Company's board and employees were preparing for bankruptcy" Third Omnibus Objection ¶ 76. Despite this dire assessment, Debtors did not issue any WARN notices.

56.    On July 28, Debtors began laying off non-union employees by issuing Severance Agreements waiving WARN liability. Hawkins Decl. ¶ 106. Despite clearly being aware of the WARN Act and that Debtors could be subject to WARN liability, Debtors did not issue any WARN notices. On July 30, Debtors' final truck on the road ceased operation, and that same day Debtors laid off all remaining union employees. Hawkins Decl. ¶ 108. Despite having at least seven days advance notice, WARN notices were not issued until July 31, 2023, the day after all employees had been laid off. *See* Hawkins Decl. ¶¶ 108.

57.     In conclusion, Debtors have not carried their burden to establish that they have satisfied the statutory notice prerequisites to be able to invoke the "unforeseeable business circumstances" or "faltering company" exceptions to WARN. As such, the Objection should be overruled.

**B.     Debtors Do Not Qualify For The Faltering Company Defense.**

58.     The "faltering company" exception to WARN, "applies to plant closings but not to mass layoffs, and should be narrowly construed." 20 CFR § 639.9(a). A "plant closing" is defined as "the permanent or temporary shutdown of a single site of employment, or one or more facilities or operating units within a single site of employment, if the shutdown results in an employment loss at the single site of employment during any 30-day period for 50 or more employees." 29 U.S.C. § 2101(a)(2). In contrast, as "mass layoff" is defined as a "[A] reduction in force which . . . is not the result of a plant closing; and . . . results in an employment loss at the single site of employment during any 30-day period for . . . at least 33 percent of the employees (excluding any part-time employees); and . . . at least 50 employees (excluding any part-time employees); or . . . at least 500 employees (excluding any part-time employees)." *Id.* at (a)(3).

59.     Debtors do not address this point, but there can be no reasonable dispute that Debtors' elimination of their entire workforce of approximately 30,000 employees constituted a "mass layoff" and not a "plant closing" under the WARN Act. Therefore, Debtors are precluded from raising the "faltering company" defense since that defense only applies to a "plant closing" which Debtors' actions were not.

60.     Even if Debtors' actions qualified as a "plant closing" they still do not carry their burden to satisfy the "faltering company" defense. To qualify for this defense an employer must prove: (1) it was actively seeking capital at the time the 60-day notice would have been required,

(2) it had a realistic opportunity to obtain the financing sought, (3) the financing would have been sufficient, if obtained, to enable the employer to avoid or postpone the shutdown, and (4) the employer reasonably and in good faith believed that sending the 60-day notice would have precluded it from obtaining the financing. 20 C.F.R. § 639.9(a).

61.     Debtors point to two types of financing that they were seeking in the months before the layoffs: (1) projected savings from the implementation of the One Yellow program, and (2) new financing from outside sources.

62.     Regarding the implementation of One Yellow, Debtors projected that it would have added approximately $22.85 million per month in operational savings. Hawkins Decl. ¶ 73. Debtors do not provide any specific information to corroborate this number other than a conclusory statement from Debtors' CEO. *See* Hawkins Decl. ¶ 73. In any event, it is not likely that these savings, if obtained, would have been sufficient to enable Debtors to avoid or postpone the shutdown for a reasonable period.

63.     First, Debtors concede that in order to convince the Union to allow Debtors to implement One Yellow, Debtors agreed to "a wage increase of $3.50 per hour with a total of $6.50 per hour in raises over the life of the agreement." Hawkins Decl. ¶ 74. Assuming that the 22,000 Union employees of Debtor worked 40 hours per week, these wage increases would result in an increased monthly wage expenditure of between $3 million and $5.7 million reducing the monthly savings achieved by One Yellow from $22.85 million to as little as $17 million.

64.     As explained in Section II.C, *infra*, the events leading to Debtors' collapse were triggered by Debtors' decision on July 7, 2023 to forgo a $50 million[10] payment due on July 15,

---

[10] Debtors' Objections omits the amount of the payment, $50 million, as well as the date that it was due, July 15, however, Claimants were able to ascertain this information through public reporting. *See* www.npr.org/2023/07/30/1190960948/yellow-trucking-shutdown-explained. Claimants respectfully request that the Court take judicial notice of this reporting.

2023 to Union-sponsored health, welfare, and pension funds. *See* Hawkins Decl. ¶ 80. Even if One Yellow had been implemented by May 7, 2023, three weeks before the 60-day WARN notice period began on May 29, 2023, Debtors' maximum savings from One Yellow would have been $45.7 million which would still have been an insufficient amount for Debtors to cover the $50 million payment due in July. Thus, even if One Yellow were implemented before the WARN notice period, the savings would not have been sufficient to enable Debtors to avoid or postpone the shutdown by making the July payment.

65.     Second, Debtors contend that they were seeking various forms of outside financing. Debtors are tellingly opaque regarding the specific details of this financing and therefore have not met their burden to show that the financing would have been sufficient for Debtors to avoid or postpone the shutdown for a reasonable period of time.

66.     In addition, Debtors "must be able to objectively demonstrate that it reasonably thought that a potential customer or source of financing would have been unwilling to provide the new business or capital if [WARN] notice were given." 20 C.F.R. § 639.9(a)(4). "That condition may be satisfied if the employer can show that the financing or business source would not choose to do business with a troubled company." 20 C.F.R. § 639.9(a)(4). Here, Debtors also fail to meet their burden.

67.     While Debtors state in conclusory fashion that the issuance of timely WARN notices would have scared off investors and prevented them from obtaining outside financing, the record clearly demonstrates that at least one of Debtors' potential sources of financing had little issue "doing business with a troubled company" as it actively sought to do business with Debtors even after the Union's strike notice was issued and the mass customer exodus had begun.

68.     On June 8, 2023 Debtors began discussions with Atlas Holdings ("Atlas") a private equity fund, regarding a potential debt or equity investment. Docket No. 2580, *Declaration of Cody Leung Kaldenberg* ("Kaldenberg Decl.") ¶ 13. On July 17, 2023 the Union issued a strike notice which led to a rapid decline in shipments. *See* Hawkins Decl. ¶¶ 88-105. In spite of the strike notice, Atlas continued to "remain interested in working with Debtors on a potential transaction, and on July 18, just one day after the strike notice, Atlas sent an extensive list of diligence requests." Kaldenberg Decl. ¶ 17. During the following week, Debtors "remained in close contact with Atlas, continuing to discuss a potential refinancing in back-and-forth communications." Kaldenberg Decl. ¶ 17.

69.     Thus, Debtors cannot demonstrate that its potential financing source, Atlas, "would not choose to do business with a troubled company," and therefore cannot objectively demonstrate that Debtors' source of financing would have been unwilling to provide the new business or capital if WARN notice were given. 20 C.F.R. § 639.9(a)(4).

70.     In conclusion, Debtors have not carried their burden to establish that they can invoke the "faltering company" exception to WARN. As such, their Objection should be overruled.

**C.     Debtors Have Not Identified Unforeseeable Business Circumstances.**

71.     Section 2102(b)(2)(A) of the WARN Act provides that an "employer may order a plant closing or mass layoff before the conclusion of the 60-day period if the closing or mass layoff is caused by business circumstances that were not reasonably foreseeable as of the time that notice would have been required." An important indicator of a business circumstance that is not reasonably foreseeable is that the circumstance is caused by some sudden, dramatic, and unexpected action or condition outside the employer's control." 20 C.F.R. § 639.9(b). An objective standard is used to determine whether business circumstances were not reasonably foreseeable;

the employer must exercise "such commercially reasonable business judgment as would a similarly situated employer in predicting the demands of its particular market." *Id.* at §639.9(c).

72.    As Debtors correctly point out, the "unforeseen business circumstances" can only be invoked if the closing is not foreseeable 60 days in advance and within a 14-day window. *Hotel Emples. Int'l Union Local 54 v. Elsinore Shore Assocs.*, 173 F.3d 175, 185 (3rd Cir. 1999). Here, the layoffs began on July 28, 2023, putting the 60-day notice period as May 29, 2023. Factoring in the 14-day window, so long as the shutdown was foreseeable at least between May 22 and June 7, 2023 Debtors cannot rely upon the "unforeseen business circumstances" test to establish a valid defense.

73.    As an initial matter, the Objection points exclusively to the Union's strike threat issued on July 17, 2023 as the sole unforeseen business circumstance supporting Debtors' defense. As explained in Section II.A, *supra*, section 2102(b) of the WARN Act mandates that an employer invoking the "unforeseeable business circumstances" exception to WARN provide its employees with "as much notice as is practicable and at that time *shall give a brief statement of the basis for reducing the notification period*." 29 U.S.C. § 2102(b)(3) (emphasis added). "[A]n employer omits vital information at its peril from the notice. If the stated basis for the shortened notice is later determined not to be the cause of the shortened notice, the notice may be found inadequate." *Childress v. Darby Lumber Co.*, 126 F. Supp. 2d 1310, 1318 (D. Mont. Jan. 4, 2001) quoting *Alarcon*, 27 F.3d at 391.

74.    Here, the WARN notices sent by Debtors vaguely state that Debtors "had hoped to complete one or more transactions and secure funds and business to prevent the closing" but was unable to do so and that "[t]hese circumstances were not reasonably foreseeable at the time notice would have otherwise been required and notice is further excused because the business is being

liquidated." *See* Hawkins Declaration ¶¶ 109-111. Debtors' WARN notices do not cite the Union's issuance of a strike notice as a basis for invoking the "unforeseeable business circumstances" defense. Thus, to the extent that the Union's issuance of the strike notice might qualify as an unforeseeable business circumstance (a position that Claimants reject), Debtors cannot invoke it to claim the "unforeseen business circumstances" defense because it was not part of Debtors' original justification for shortening the time period in which the WARN notices that were issued.

75.     Assuming *arguendo* that Debtors' WARN notices were not defective, the Union's issuance of the July 17, 2023 strike threat and the economic collapse that resulted was entirely foreseeable and the direct result of circumstances within Debtors' control well in advance of the 60-day notice period and 14-day window.

76.     In the months leading up to Debtors' collapse, Debtors engaged in a back-and-forth correspondence with the Union regarding the opening of negotiations to replace the expiring collective bargaining agreement. The correspondence not only demonstrates that Debtors had a clear understanding of their own precarious financial situation, but also understood that the Union could potentially strike. In correspondence to the Union dated April 21, 2023, CEO Darren Hawkins stated that if the parties' joint efforts to negotiate on an expedited basis failed "it is a virtual certainty Yellow will not be able to operate as a going concern. Accordingly, the negotiating window we have to get this done will likely be measured in weeks not months." Hawkins Decl., Exhibit 11.

77.     In a letter dated May 4, 2023, Union representatives agreed to begin negotiations on a new collective bargaining agreement beginning on August 1, 2023, with the express understanding that the Union would be permitted to strike in support of its bargaining position:

[The Union] hereby accepts Yellow's request to formally re-open the Yellow [collective

> bargaining agreement] contingent upon Yellow's agreement to the following terms … the parties are permitted the full use of their economic weapons (e.g. strike/lockout) in support of their respective positions.

Hawkins Decl., Exhibit 12.

78.     The next day, Hawkins sent a response letter to the Union indicating his understanding that due to "a serious and immediate liquidity crisis," Debtors did not wish to delay negotiations until August as "Yellow may not exist if we wait until then to start:"

> Indeed, though the Company appreciates the Teamsters' agreement to reopen the contract, waiting until August to commence bargaining will not work under the circumstances as Yellow may not exist if we wait until then to start. … [A]s the Company's detailed financials demonstrate, which were made available to the Teamsters at your request weeks ago, Yellow faces a serious and immediate liquidity crisis.

Hawkins Decl., Exhibit 13.

79.     As this correspondence indicates, Debtors clearly understood as early as May 2023 that (1) the Union would strike in support of its bargaining position, and (2) that the severity and immediacy of Debtors' liquidity crisis meant that Debtors might not survive through August.

80.     Indeed, Debtors' First Day declarations make the case that Debtors clearly foresaw that the actions taken by the Union would lead to the Debtors' ultimate demise.

81.     Debtors concede that, as early as December 2022, Union president Sean O'Brien was "repeatedly warned and knew full well that obstructing One Yellow would financially destroy Yellow and put 30,000 employees out of work." Docket No. 14, ¶ 5. In fact, Debtors were so concerned by the Union's actions that they felt "[p]ushed to the brink" and initiated litigation against the Union "to try and save [themselves]" nearly six weeks prior to filing for bankruptcy. Docket No. 14, ¶ 10.

82.     It was within this context that Debtors made the decision on July 7, 2023 to forgo a $50 million payment due on July 15 to Union-sponsored health, welfare, and pension funds.

Although Debtors contend that the Union had previously agreed to deferred payments in the past, it is not clear that Debtors ever actually informed the Union of its intention to miss the July payment or that the Union was aware that the July payment had been missed until informed by the providers on July 17 that employee plans would imminently be canceled.

83.     Thus, it was entirely foreseeable that failing to prioritize payments to Union-sponsored health, welfare, and pension funds leading to their impending cancellation in the midst of collective bargaining negotiations, a decision fully within Debtors' own control, would provoke a proportionate response from the Union including, as the Union asserted in its May 12 letter, a possible strike to protect its members' interests. Given that Debtors were well aware of their precarious financial situation and their need to reach a deal with the Union to stay solvent, it was also foreseeable that taking such action and provoking the Union would lead to disastrous financial consequences.

84.     In conclusion, Debtors have not carried their burden to establish that they can invoke the "unforeseeable business circumstances" exception to WARN. As such, their Objection should be overruled.

**D.     The "Good Faith" Defense Is Not A Basis For Complete Expungement.**

85.     Section 502(b) sets forth the grounds for disallowing a properly filed proof of claim. *See* 11 U.S.C. § 502(b). "[W]here a party in interest objects, the court 'shall allow' the claim 'except to the extent that' the claim implicates any of the nine exceptions enumerated in § 502(b)." *Travelers Cas. & Sur. Co. of Am. v. Pac. Gas & Elec. Co*., 549 U.S. 443, 449 (2007) (quoting 11 U.S.C. § 502(b)). Here, the Objection does not specify which of the 502(b) exceptions that Debtors rely upon. However, it appears that Debtors can only rely on 502(b)(1) which calls for

disallowance or expungement of claims that are "unenforceable against the debtor and property of the debtor, under any [] applicable law."

86.      As Debtors correctly point out, the WARN Act provides that,

If an employer which has violated this Act proves to the satisfaction of the court that the act or omission that violated this Act was in good faith and that the employer had reasonable grounds for believing that the act or omission was not a violation of this Act the court may, in its discretion, reduce the amount of the liability or penalty provided for in this section.

29 U.S.C. § 2104(a)(4).

87.      Debtors argue that, at all relevant times, they acted in good faith and qualify for the reduction in penalties outlined in 29 U.S.C. § 2104(a)(4). However, since 29 U.S.C. § 2104(a)(4) only reduces WARN liability instead of eliminating it, the 502(b)(1) exception cannot apply since an enforceable WARN claim still remains even if the "good faith" reduction applies. As such, even if Debtors establish that they acted in "good faith" under 29 U.S.C. § 2104(a)(4), that cannot result in the wholesale disallowance or expungement of Claimants' WARN claims.

88.      Regardless, Debtors have not carried their burden to establish that they qualify for the "good faith" reduction under 29 U.S.C. § 2104(a)(4). As explained in Section II.C, *supra*, despite being well aware that they faced a serious liquidity crisis and that the Union would strike to protect its members' interests, Debtors still made the conscious decision to engage in a course of action that they knew would provoke the Union and likely lead to Debtors' own demise. Even still, Debtors waited until after they had laid off its entire workforce to issue WARN notices. Debtors' actions can hardly be described as being in good faith.

89.      As such, Debtors' Objections should be overruled.

## V.    ALTERNATIVELY, THE COURT SHOULD ALLOW CLAIMANTS TO TAKE DISCOVERY ON DEBTORS' WARN DEFENSES

90.    When a debtor files an objection to a claim, a contested matter is initiated. *In re CM Holdings*, 221 B.R. 715, 720 (D. Del. 1998) (citing *In re Chateaugay Corp*., 104 B.R. 622, 624 (S.D.N.Y. 1989)); *see also* Fed. R. Bankr. P. 9014(a). As contested matters, claim objections are subject to standard discovery procedures and disposition on summary judgment. *See* Fed. R. Bankr. P. 9014(c).

91.    Here, Debtors put forth a number of factual assertions to support their Objection. However, Claimants have not yet had a chance to take discovery on their WARN claims. Debtors have only recently filed an Answer in the related adversary proceedings, and no scheduling order has been entered in that case. *See* Adv. 23-50761. The relief sought by Debtors' Objections effectively amounts to a request for summary judgment of all pending WARN-related adversaries. Debtors have hamstrung Claimants' ability to mount an effective defense by utilizing the claims objection process to adjudicate the underlying merits of the WARN disputes without being subjected to a formal discovery process. As such, Claimants face the prospect of their ability to recover against Debtors being wiped out on an incomplete and cherry-picked factual record.

92.    Thus, if the Court is not inclined to overrule the Objections, Claimants would respectfully request that a decision on the Objections be deferred to allow Claimants to take discovery regarding Debtors' WARN liability and alleged defenses.

## VI.    CONCLUSION

WHEREFORE, Claimants respectfully request that the Court enter an Order overruling the Objections. Alternatively, Claimants request that the Court delay issuing a final ruling to allow Claimants to take discovery regarding Debtors' WARN liability and alleged defenses.

## <u>RESERVATION OF RIGHTS</u>

Claimants reserve and preserve all of their rights to supplement or amend this Response at or prior to any final hearing on the Debtors' Third, Fourth, and Fifth Omnibus Objections. The Claimants also reserves all their rights with respect to any filing by the Debtors or other parties relating to these matters prior to any final hearing or through the adversary proceedings. Nothing contained in or omitted from this Response constitutes an admission or stipulation by the Claimants, either collectively or individually, or any other party with respect to any alleged claims against the Debtors, including but not limited to the amount, validity, and enforceability of any alleged claims against the Debtors or the extent, validity, priority, or perfection of any alleged liens and security interests in the Debtors' assets.

Dated:  March 29, 2024

**MORRIS JAMES LLP**

*/s/ Eric J. Monzo*
Eric J. Monzo (DE Bar No. 5214)
Brya M. Keilson (DE Bar No. 4643)
Tara C. Pakrouh (DE Bar No. 6192)
500 Delaware Avenue, Suite 1500
Wilmington, DE 19801
Telephone: (302) 888-6800
E-mail: emonzo@morrisjames.com
E-mail: bkeilson@morrisjames.com
E-mail: tapkrouh@morrisjames.com

and

Philip C. Hearn, Esq. (MSB # 9366)
HEARN LAW FIRM, PLLC
Post Office Box 5009
Jackson, Mississippi 39296
Telephone: 662-766-7777
E-mail: philiphearn@yahoo.com
E-mail: cass.hearnlaw@gmail.com

*Counsel to Coughlen WARN Plaintiffs*

16628017/4