**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | |
| | Chapter 11 |
| YELLOW CORPORATION, *et al*., | |
| | Case No. 23-11069 (CTG) |
| Debtors. | (Jointly Administered) |
| | **Related Docket No. 2576** |
| | **Response Deadline April 4, 2024 (by consent)** |
| | **Hearing Date: April 11, 2024 @11:00am** |

**NEW YORK STATE TEAMSTERS COUNCIL HEALTH AND HOSPITAL FUND'S LIMITED RESPONSE TO DEBTORS' THIRD OMNIBUS OBJECTION TO PROOFS OF CLAIM FOR WARN LIABILITY**

Creditor, New York State Teamsters Council Health and Hospital Fund (the "New York Health Fund"), by and through its undersigned counsel, respectfully submits this Limited Response to *Debtors' Third Omnibus Objection (Substantive) to Proofs of Claims for WARN Liability* (the "Third WARN Act Objection," Dkt. No. 2576) to the extent that the Third WARN Act Objection challenges the standing of the New York Health Fund to collect—or otherwise challenges the New York Health Fund's right to—employee benefit contributions based on wages and benefits owed to Debtors' former employees under the Worker Adjustment and Retraining Notification Act of 1988, 29 U.S.C. §§ 2101–2109 (the "WARN Act"), and New York State Worker Adjustment and Retraining Notification Act of 2009, as amended, Art. 25-A, NY Lab L§§860-A--860-H,12 NYCRR §§ 921-1.0--921-9 (the "NYS WARN Act") (collectively, "WARN Acts"). (*See* Third WARN Act Objection, Dkt. No. 2576, at ¶¶ 111-113) In support of its Limited Response to Debtors' Third WARN Act Objection, the New York Health Fund relies on the Declaration of Kenneth R. Stilwell ("*Stilwell Decl*.") and sets forth the following.

**INTRODUCTION**

1. The Debtors' argument that "the WARN Act-related claims filed by the New York Health Fund fail for lack of standing" misconstrues the basis of the New York Health Fund's claims. (*See* Third Omnibus Objection to WARN Act Claims, Dkt. No. 2576, at ¶¶ 111–13.) Specifically, the New York Health Fund's claims do not directly rely upon 29 U.S.C. § 1204 (a) or Art. 25-A, NY Lab L§ 860-g, but rather derive from pre-existing contracts, namely the collective bargaining agreements and participation agreements executed by certain of the Debtors which require employee benefit contributions on behalf of aggrieved employees as part of their compensation for wages and benefits payable under the WARN Acts.

2. As discussed in more detail below, Debtors contractually agreed to make employee benefit contributions to the New York Health Fund for covered employees for all compensable periods. Accordingly, because aggrieved employees who participated in the New York Health Fund are owed compensation for the 60-day period following their termination under the WARN Acts, 29 U.S.C. § 2104(a)(1)(A) and NY Lab. L§ 860-g.1, Debtors' are liable for the corresponding employee benefit contributions to the New York Health Fund as part of the aggrieved employees' compensation to effectuate payment of the benefits owed to those employees.

**BACKGROUND**

3. The New York Health Fund was created and exist pursuant to an Agreement and Declaration of Trust entered into between participating employers and union locals affiliated with the International Brotherhood of Teamsters (the "IBT") and is a "multiemployer plan" as defined in Section 3(37)(A) of the Employee Retirement Income Security Act of 1974, as amended. ("ERISA"), 29 U.S.C. §1002(37)(A). The New York Health Fund is an "employee benefit plan" (the "Plan") as defined in ERISA Section 3(3), 29 U.S.C. §1002(3). (*Stilwell Decl.,* ¶ *2*)

4. There are approximately 468 employers that participate in New York Health Fund, representing more than 10,600 active participants. (*Stilwell Decl., ¶ 3*) The New York Health Fund receives self-reported contributions remitted by participating employers on behalf of covered employees pursuant to collective bargaining agreements with the IBT and participation agreements among participating employers, IBT and New York Health Fund. The contributions and investments thereon are held in trust and used for the exclusive purpose of providing health and welfare benefits to participants and beneficiaries (and defraying reasonable administrative expenses) of the New York Health Fund as required by ERISA Sections 403(a) and 404(a)(1)(A)(i)(ii), 29 U.S.C. §§1103 (a) and 1104 (a)(1)(A)(i)(ii). (*Stilwell Decl., ¶ 3*)

5. Here, certain of the Debtors participated in the New York Health Fund as "employer[s]" as they are defined by ERISA Section 3(5), 29 U.S.C. §1002(5).[1] As participating employers, the Debtors were signatory to collective bargaining agreements with the IBT (the "Collective Bargaining Agreements") which required, among other things, employee benefit contributions to the New York Health Fund on behalf of covered employees for all compensable periods. (*Stilwell Decl., ¶ 5, Ex. A.*) The Debtors were also signatory to participation agreements by and among the Debtors, IBT and New York Health Fund (the "Participation Agreements") which further required Debtors to remit employee benefit contributions to the New York Health Fund for all compensable periods as part of the covered employees' compensation. (*Stilwell Decl., ¶ 5, Ex. B.*)

[1] Several of the Debtors employing IBT affiliated former employees of Yellow Corporation subsidiaries participated in the New York Health Fund to include: YRC Inc., USF Holland, LLC and New Penn Motor Express, LLC (the "Debtors") (*Stilwell Decl., ¶ 4)*.

6. Upon receipt of the employee benefit contributions, the New York Health Fund provided hundreds of Debtors' covered "employees", as they are defined in ERISA Section 3(6), 29 U.S.C. §1002 (6), with health and welfare benefits including, but not limited to, hospital, medical, surgical, prescription, accident, disability, death, dental and prepaid legal services. The Debtors' covered "employee[s]" are also "participants" in the Plan as defined in ERISA Section 3(7), 29 U.S.C. §1002(7). (*Stilwell Decl.,* ¶ *6.*)

7. The New York Health Fund filed five (5) Proofs of Claim for employee benefit contributions owed on behalf of the aggrieved employees who are "participants" in the Plan as part of the compensation due them for the wages and benefits payable by Debtors as a result of their violations of the WARN Acts.[2]

**ARGUMENT**

8. The Debtors' Third WARN Act Objection misstates the basis for the New York Health Fund's claims in arguing that the New York Health Fund lacks standing. (*See* Third WARN Act Objection, Dkt. No. 2576, at ¶¶ 111–13.) Specifically, Debtors mistakenly focus on the Third Circuit's limited holding that "Funds are not 'person[s]' that may enforce the WARN Act." (*Id.* at ¶ 112 (citing *In re APA Transp. Corp. Consol. Litig.*, 541 F.3d 233, 240-42 (3d Cir. 2008)). But Debtors' argument that the New York Health Fund lacks standing is based on a faulty assumption—the New York Health Fund does not seek to enforce the WARN Acts in connection with its contributions claims, but rather seeks to vindicate its rights under ERISA and under pre-

[2] The five (5) Proofs of Claim filed by the New York Health Fund are designated as claim numbers 4456, 4457, 4458, 4459 and 4460 and include employee benefit contributions payable by Debtors as compensation on behalf of the aggrieved employees for the 60-day period under the WARN Acts in the aggregate amount of $1,580,645.37. (*Stilwell Decl.,* ¶ *9)*. The New York Health Fund reserves the right to amend these claim amounts, including amendments based on work history information obtained from Debtors after the date that the Proofs of Claim were filed since audits are being conducted of Debtors.

existing contracts, namely the Collective Bargaining Agreements and Participation Agreements.[3] Specifically, and as explained below, the Debtors are required by contract to pay contributions whenever they are obligated to pay compensation to their covered employees, and it is this contractual mechanism that gives rise to the New York Health Fund's claims for employee benefit contributions arising from the compensation due the aggrieved employees under the WARN Acts.

9. As an initial matter, any payment on the WARN Acts claims would effectively be payment of wages for the 60-day period for which Debtors failed to give proper notice. Pursuant to 29 U.S.C. § 2104(a)(1)(A) and NY Lab. L§ 860-g.1, Debtors are required to pay compensation to their covered employees for a period of 60 days following the asserted plant closings/mass layoffs because Debtors failed to provide any notice required by 29 U.S.C. § 2102(a) and NY Lab. L§ 860-b. The WARN Acts describe the liability of the employer under 29 U.S.C. § 2104(a)(1)(A) and NY Lab. L§ 860-g.1.(a) as "back pay." As bankruptcy courts have explained, WARN Act claims thus have a "compensatory nature" "in the nature of wages" and must be treated as wage claims. *In re Powermate Holding Corp.*, 394 B.R. 765, 771 (Bankr. D. Del. 2008) (*citations and quotation marks omitted*).

10. The fact that compensation is owed for the 60-day WARN Acts period gives rise to a claim for employee benefit contributions under the Collective Bargaining Agreements and Participation Agreements executed by the Debtors. Both the Collective Bargaining Agreements and Participation Agreements generally provide, among other things, that the Debtors and IBT are bound by the terms of the New York Health Fund's Trust Agreement, plan documents, and all of

[3] Unlike the plaintiff funds in *APA Transp. Corp. Consol. Litig.,* the New York Health Fund here did not "bring suit under the WARN Act" against Debtors but filed Proofs of Claim for employee benefit contributions owed for the aggrieved employees as part of their compensation for the wages and benefits under the WARN Acts.

the rules and regulations. (*Stilwell Decl.,* ¶ *5*, *Exs. A and B*.) The courts have consistently held that employers are required to pay contributions on behalf of covered employees whenever compensation is owed "in accordance with the rules and regulations of the funds as memorialized in the funds' participation agreements". *See New York State Teamsters Conference Pension and Retirement Fund et. al. v. United Parcel Service, Inc.,* 382 F.3d. 272, 275 (2nd Cir. 2004).

11. Here, the Collective Bargaining Agreements and the Participation Agreements require employee benefit contributions be paid on behalf of the covered employees for all compensable time as required by those contracts and ERISA. See, e.g., ERISA Section 515, 29 U.S.C. § 1145 (*See, e.g., Stilwell Decl.,* ¶ *5*, *Exs. A and B*.)

12. Accordingly, Debtors were and are obligated to contribute to the New York Health Fund on behalf of covered employees for any period for which compensation is owed, including in connection with the compensation owed for the 60-day period following termination of the aggrieved employees as provided by the WARN Acts.

13. This result comports with text and purpose of the WARN Acts. Indeed, 29 U.S.C. § 2104 and NY Lab. L§ 860 do not purport to eliminate causes of action based on contract or ERISA, and 29 U.S.C. § 2105 and NY Lab. L§ 860-I provide that "[t]he rights and remedies provided to employees by this chapter [article] are in addition to, and not in lieu of, any other contractual or statutory rights and remedies of the employees, and are not intended to alter or affect such rights and remedies." As one district court has explained, "Congress clearly did not intend to have the WARN Act displace pre-existing contract rights." *Knudsen v. Queenstake Resources U.S.A., Inc.*, Case No. 09-cv-00385, 2010 WL 11571247, at *12 (D. Nev. May 24, 2010). Courts have also held that the WARN Act does not preempt claims arising from ERISA, plan documents, or other labor contracts. *See, e.g., Deppenbrook v. Pension Ben. Guar. Corp*., 950 F. Supp. 2d 68,

77 n.5 (D.D.C. 2013) ("[T]he WARN Act, by its very terms, does not purport to alter the plaintiffs' rights under the ERISA or under the Hourly Pension Plan"), *aff'd* 778 F.3d 166 (D.C. Cir. 2015). Accordingly, Debtors are mistaken when they argue that the New York Health Fund lacks standing to seek employee benefit contributions stemming from the required WARN Acts compensation, because such claims arise from pre-existing contracts and ERISA and are not preempted by the WARN Acts.

**CONCLUSION**

For the reasons set forth above, the Court should overrule Debtors' Third WARN Act Objection (Dkt. No. 2576) to the extent that said objection challenges (on standing grounds and/or other grounds) the New York Health Fund's contributions claims for the 60-day WARN Acts period and allow the claims as filed.

Respectfully submitted,

Dated: April 4, 2024

**SULLIVAN · HAZELTINE · ALLINSON LLC**

*/s/ William D. Hazeltine*
William A. Hazeltine (No. 3294)
William D. Sullivan (No. 2820)
North Market Street, Suite 420
Wilmington, DE 19801
Tel: (302) 428-8191
Fax: (302) 428-8195
Email: whazeltine@sha-llc.com
bsullivan@sha-llc.com

and

Vincent M DeBella, Esq. (*Pro Hac Vice*)
Paravati, Karl, Green & DeBella, LLP
Landmarc Building
520 Seneca St., Suite 105
Utica, NY 13502

Tel: (315) 735-6481
Fax: (315) 735-6406
Email: vdebella@pkgdlaw.com

*Attorneys for The New York State Teamsters Council Health and Hospital Fund*